ISAAC C. HILL *v.* WASHINGTON SAMUEL et al.

1. VENDOR AND VENDEE: RESCISSION OF CONTRACT.—The vendee under a title bond may elect to abandon the contract, if the vendor should be unable to convey a good title according to the terms of the bond; but he cannot abandon it so as to enable him to purchase the land from another party, and hold it adversely to the vendor, without having first put the vendor in default, by a demand for a deed, and without a return of the possession of the land to the vendor, where he has received possession from him; although, by the terms of the bond, the vendor was bound to make the conveyance within a limited time. *Standifer* v. *Davis,* 13 S. & M. 48; *Johnson* v. *Beard,* 7 Ib. 214; *Hudson* v. *Watson,* 26 Miss. R. 357; *Hardeman* v. *Cowan,* 13 S. & M. 487; *Champlin* v. *Dotson,* 13 Ib. 554.

2. SAME: RIGHT OF VENDEE TO PURCHASE INCUMBRANCE.—The vendee cannot buy in an outstanding and paramount title, and hold it adversely to the vendor, so as thereby to defeat the right of the latter to recover from him the purchase-money. If the outstanding title be a valid incumbrance, the vendee will be entitled to a credit on the sum due for the purchase-money, for the amount paid in extinguishing it, but to no more.

3. DEED OF TRUST: REGISTRATION OF, ETC.—It is not necessary to the validity of a deed of trust that it be registered, or that its execution be proven; as between the parties to the deed, and all others claiming under them through it, the deed of trust will be as good and effectual without registration as with it.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

*Freeman* and *Dixon,* for appellant,

Insisted that as Thompson had no title, and could not therefore comply with his title bond, Hill had a right to abandon the contract at any time. That it is well settled, even at law, that the vendor who has given a title bond only, could not recover for the purchase-money, unless he had a good title, and was able to make a conveyance according to his bond. *Halloway* v. *Moore,* 4 S. & M. 594; *Liddell* v. *Sims,* 9 Ib. 596; *Fearnster* v. *May,* 13 Ib. 275; *Green* v. *M'Donald,* Ib. 445; *Wiggins* v. *M'Gimpsey,* Ib. 532; *Mobley* v. *Keyes,* Ib. 677.

2. That it is not true, as suggested by counsel, that Hill received possession from Thompson. The answer shows that the land was wild and uncultivated at the time of Hill's purchase. The pos-

Hill v. Samuel et al.

session of such lands are presumed to be in the true owner, and Thompson not having title, the possession was not in him; and hence he could not have delivered it to Hill. It was not, therefore, necessary for Hill to have abandoned the possession before he could purchase adversely to Thompson.

3. The bond in this case required Thompson to make title within six months. None of the purchase-money was due before twelve months. The deed then was to be made before the purchase-money was due, and was a condition precedent to the payment. There has been no deed made or tendered in the bill. The suit cannot be maintained unless this condition be first complied with. *Harris* v. *Bollori*, 7 How. (Miss.) R. 170; *Stockton* v. *George*, Ib. 174; *Bank of Columbia* v. *Hagner*, 1 Peters, 465.

*W. C.* and *A. K. Smedes* for appellee.

The attempt is made in this case by Hill, after having gone into possession under a contract of purchase from Thompson, to defeat his liability for the purchase-money, upon the ground that Thompson had no title, and that he, Hill, had purchased from a third party a good and valid title to the land. It has been held by repeated decisions of this court, that he cannot do this. Hill is entitled to a credit on the purchase-money, for the amount paid in extinguishing the incumbrance. This has been allowed him by the decree of the court below.

HANDY, J., delivered the opinion of the court.

The appellee filed this bill in the Superior Court of Chancery, stating in substance, that on the 25th of March, 1842, James C. Wilkins and wife sold the tract of land involved in the suit to one Tucker, by deed duly executed, acknowledged, and recorded; and that on the 27th of February, 1847, Tucker conveyed the land to Manlius V. Thompson, as trustee, with power to sell, and out of the proceeds, to pay a debt due by David Suggett (by whom the purchase-money was paid to Tucker,) to one Cocks, and to apply the residue to a debt due by Suggett to Samuel, the complainant. This deed of trust was proved by the subscribing witnesses, and recorded in February, 1850; that Thompson took and held posses-

sion until 17th of November, 1849, when he sold the land to Hill, and executed a bond for title, which (after reciting the sale and the terms, which were, that Hill was to pay eight thousand dollars in four equal annual instalments, the first of which were to become due 1st of January, 1852,) binds Thompson to convey, or cause to be conveyed, the land to Hill, by a good and valid deed of general warranty, within six months from that date, reserving a lien for the purchase-money. This bond was proved by the subscribing witnesses, and recorded in the proper county on the 29th of June, 1850. The notes executed by Hill are exhibited with and made a part of the bill, and are made payable to "M. V. Thompson, in trust for Washington Samuel;" and the consideration is stated on their face to be, the purchase-money of the land. The bill avers that Hill went into possession under the purchase, and has remained in possession ever since.

It is further stated, that on the 11th of May, 1840, a judgment was rendered in the United States Circuit Court at Jackson, for this State, against James C. Wilkins; and that upon an execution issued thereon, this land was sold in October, 1850, and purchased by one Mott; that so soon as information was obtained of these facts, Suggett made application to Mott to purchase his interest in the land, in order to perfect the title to Hill, but that he learned from Mott that Hill had already applied to him to purchase the land, and that he felt bound to convey to him, which he accordingly did in February, 1852, the price being five dollars per acre; and that when Hill purchased from Mott, he was in possession under his contract with Thompson. It further appears that Thompson died soon after the execution of the title bond to Hill, without having executed a deed to Hill, and before he was bound to do so by the terms of the bond.

The prayer is for an account of the amount due on the notes of Hill; that he be declared as holding the land in trust for the complainant; and that it be sold to pay what, upon taking the account, may be found due; and that the legal title, now in the heirs of Thompson, who are made parties, may be conveyed to Hill, upon his paying the amount due.

The bill was taken *pro confesso* against all the defendants, except

the heirs of Thompson, who answered by their guardian, *ad litem*, and Hill, who also answered. He admitted the contract with Thompson as alleged, and states, that he relied upon Thompson's responsibility to make him a title within the time limited in the contract, but that Thompson had not then, nor since, any title whatever to the land; that he had no notice of the conveyance from Tucker to Thompson, which was not recorded until long after his contract, and the acknowledgment was not proved until after Thompson's death; and therefore, that the deed was never duly executed, and that the trust failed, and was never accepted by Thompson; that no deed has ever been tendered in accordance with the contract made with Thompson; and denies that Thompson, in his lifetime, had possession of the land, or delivered possession to the respondent. He admits the execution of the notes, and for the consideration stated in the title bond of Thompson; but alleges that the consideration has entirely failed—the complainant never having had any title to the land; and that complainant did not receive the notes as a consideration for the purchase-money of the land, but for a different consideration, not connected with the sale of the land. He admits the purchase from Mott, but alleges that Tucker had no title, and that his deed to Thompson conveyed no interest. He admits the death of Thompson without his having executed a deed to respondent, and charges that, inasmuch as he died without accepting or executing the trust, and before the deed from Tucker was acknowledged or proved, the deed became void, and that proof of its execution after his death could not give it any legal effect.

Upon the final hearing upon the pleadings and exhibits, the chancellor decreed that the land should be sold for the payment of the sum due on the notes of Hill, allowing him credit for the sum paid in obtaining the outstanding title of Mott, and that the title of Thompson's heirs should be conveyed to him; from which decree Hill has taken this appeal.

The ground upon which the complainant's right of recovery is resisted, is, that Thompson had no title to the land which he could convey under his contract; and as he was bound to convey the title by a limited time, and failed to do so, the vendee had the right to

consider the contract as at an end, and to acquire title to the land from any other source.

With respect to the right of Hill to abandon the contract, it is true that he might have been permitted to do so upon discovery of the defective title of his vendor. But it is not shown that he took the steps proper and requisite in order to put an end to the contract. He gave no notice to Thompson of his intention, nor to the complainant, he retained the title-bond which he had received, permitting his own notes to remain outstanding, and made no demand upon Thompson, nor upon any other person, for the deed which he had the right to require under the terms of the title-bond; and above all, he did not abandon the possession of the land, which is alleged by the title to have been delivered to him, when the contract of sale was made, and is not denied by the answer.

Under the rule, as settled by the court, he could not put an end to the contract and put the vendor in default, without a demand of a deed; although by the terms of the contract, the vendor was bound to make the conveyance by a limited time. *Standifer* v. *Davis*, 13 S. & M. 48; *Johnson* v. *Beard*, 7 Ib. 214; *Hudson* v. *Watson*, 26 Miss. 357.

His situation, then, must be considered as that of a vendee in possession of the land under his purchase, and, without having, by proper legal steps, put an end to the contract, purchasing in a title adverse to that of his vendor, and setting it up to avoid his contract with his vendor. And it is firmly settled, as the doctrine of this court, that this cannot be done; because, having recognized the title by the purchase, the purchaser shall do nothing to the prejudice thereof, so long as the relation continues. *Hardeman* v. *Cowan*, 10 S. & M. 487; *Champlin* v. *Dotson*, 13 Ib. 554, and authorities there cited. It is held that he would only be entitled to a credit for so much as he had paid in purchasing in the outstanding title, or in extinguishing an incumbrance; and that was allowed in this case.

The injustice of a contrary rule is most manifest. It would offer an inducement to purchasers to violate their contracts, and, after having purchased the interest of an honest vendor, having a substantial right to the property, but against which there might be

Hill *v.* Samuel et al.

some unknown incumbrance, to take advantage of the imperfection of the title, which might be one of mere legal form, purchase in the outstanding title for a trifle, and set it up to defeat the contract between him and his vendor. Nothing could be more destructive of the integrity of contracts, than to sanction a rule leading to such results. Good faith would require that, if the vendee discovered a defect in the title of his vendor, and which was capable of being supplied, he should give him an opportunity to do whatever might be necessary to carry out his obligation, and convey a valid title. But upon no principle of justice can the vendee be permitted, without having taken proper and legal steps to put an end to the contract, to avail himself of the position he has in having possession of the property, and purchase in an outstanding title, and set it up to defeat his own contract, and to the prejudice of his vendor. And the justice of this rule is illustrated in this case.

It does not appear for what sum the land was sold, under the execution, when it was purchased by Mott; but it appears that the land, which was a short time before sold by Thompson to Hill for $8000, was sold by Mott to Hill for $2550. It is but just to presume that the first sale was for the fair value of the property; and if it was, it is highly probable that the sale by Mott was made at the reduced price, in consideration of doubts existing in relation to the title acquired by Mott under the execution sale. The principle applicable to the case is the same as if Hill had purchased Mott's title for five dollars. And if such practices were sanctioned, the effect would be, that the fact that a party was in possession of the property claiming title, as Hill was in this case, would cause the property to sell for less than its fair value at execution sale; and after that result was produced, to allow him to purchase in the title acquired under the execution sale, and use it to defeat the right under his prior purchase, would be to enable him to take advantage both of his vendor, and of the party whose title he purchased in. A rule tending to encourage such practices and results could never receive the sanction of a court of equity.

But it is said that Thompson has not performed his contract, and cannot do it. If notice had been given by Hill, of the incumbrance, it might have been removed. But it was placed out of the

power of the parties interested to do so, by the conduct of Hill in purchasing in the title of Mott. And Hill has been enabled to obtain a title to the land, which is conceded to be good, by means of his purchase from Thompson, and through the advantage derived from his possession. And it is but just that he should pay what he agreed to pay Thompson for the land, after being allowed for what he has paid in order to perfect the title.

There is nothing in the objection that Thompson obtained no title by the deed from Tucker to him, because he died before the deed was proved to have been executed, and therefore that he never accepted the trust. The validity of the deed as between the parties, and those claiming under them through the deed, did not depend upon proof of acknowledgment. That was only necessary in order to registration; and the deed, as between the parties, was effectual, without any acknowledgment or proof by subscribing witnesses.

The acceptance of the trust by Thompson is fully shown by his execution of the title-bond, and by his taking the notes of Hill for the purchase-money; which show that they were made to him as trustee.

It is conceded that the title derived from the execution sale was paramount to the title of Thompson. But under the principles governing the case, it is not competent for Hill to set up that title to the prejudice of his vendor. And it is to be remarked, that that title does not convey the dower interest of the wife of James C. Wilkins in the land; and to that extent, it is not complete. But under the conveyance directed by the decree in this case, the dower interest having been regularly conveyed to Tucker, and by him to Thompson, would pass, and thereby the title of Hill would be complete.

Upon consideration of the whole case, we are satisfied that the decree is correct, and it is affirmed.