G. W. DYER, ADMINISTRATOR, ETC. v. JAMES BRITTON.

1. COVENANTS THAT RUN WITH THE LAND.

A covenant to "warrant and forever defend the title in fee-simple against all lawful claims whatever," is a covenant that runs with the land.

2. COVENANTS IMPLIED BY STATUTE.

The covenants implied by the statute, from the use of the words "grant, bargain and sell," that the grantor is seised of an estate free from incumbrances, and of quiet enjoyment, do not arise if the grantor makes express warranties. These will be considered the measure of his undertaking and will exclude all further liability.

3. STARE DECISIS.

The decisions in this State are, that, in order to sustain an action on covenants of general warranty, there must be either actual eviction by judicial process, or a surrender of possession to a valid subsisting outstanding title which has been asserted, or the vendee must have been held out of possession by such title.

4. CONSTRUCTIVE OR EQUITABLE EVICTION.

The court adheres to the former decisions; but, were the question *res integra*, it would adopt the reasoning and conclusions of decisions which have admitted constructive or equitable evictions as of equal import with actual ouster under certain circumstances.

5. OTHER EFFECTUAL REMEDIES.

If there were not other effectual remedies for these constructive or equitable evictions, this court would not hesitate to overturn the previous decisions, if they were the obstruction.

6. SAME. *Assumpsit and bill in equity.*

The covenantee may be reimbursed for outlays in extinguishing equitable incumbrances or in getting in the adverse paramount title by action of assumpsit or by proceedings in equity; and one of these remedies may be employed in every instance where money has been necessarily expended to discharge the estate from incumbrances or to get in a title to avoid eviction.

7. MEASURE OF COVENANTOR'S LIABILITY.

In no case would the covenantor be liable to refund more than was actually paid, and never in excess of his liability on the covenant where an actual eviction could be assigned as a breach.

8. DUTY OF COVENANTEE.

While the covenantee is not put to the useless expense of a fruitless litigation against an incumbrance or paramount title that must eventually prevail, yet he assumes the risk of judging correctly as to the

title or incumbrance which he buys in, and must establish, as a condition precedent to his recovery either at law or in equity, that it was a paramount title or lien covered by his warranty, and that he acted under a necessity to save the estate.

9. PLEADING.

The question presented in this case by the action of covenant on the breach of warranty has no other significance than.of pleading and the method of remedy. It is of no practicable importance, therefore, whether former decisions shall stand or be overruled.

10. SAME.  *Amendment.*

The cause of action in the case at bar being substantially the same whether covenant or assumpsit, the plaintiff below was given permission to reform his pleadings so as to change the form of the action from covenant to assumpsit. This kind of amendment is expressly permitted by statute.

ERROR to the Circuit Court of Panola County.

Hon. E. S. FISHER, Judge.

*James G. Hall, Jr.*, for the plaintiff in error, argued the case orally, and filed a brief, insisting that a covenant of general warranty does not include within its scope a covenant against incumbrances or any of the special covenants. *Blydenbury* v. *Cotheal*, 1 Duer (N. Y.), 195 ; *Griffin* v. *Fairbrother*, 1 Fairf. (Me.) 95 ; *Patton* v. *McFarlane*, 3 Penn. 422 ; *Hoy* v. *Taliaferro*, 8 S. & M. 738 ; *Duncan* v. *Lane*, 8 S. & M. 752. Even, however, if it did contain such a covenant, the assignee could not maintain an action (as in this case), covenants against incumbrances being broken, if at all, as soon as made, and the right of action becoming a *chose in action*, which does not pass by sale to the assignee. Rawle on Covenants, 90, 318, 333, and authorities cited.

The covenant in the case at bar is that of general warranty only. Before an action can be maintained for a breach of such a covenant there must be (1) an actual eviction by paramount title; or (2) the covenantee must be held out of possession by a paramount title ; or (3) he must surrender possession to a paramount title, and take upon himself the burden of proving that the title to which he surrendered was actually paramount. I am aware that there is great conflict as to this doctrine. Rawle holds that a covenantee may maintain an action without any change of possession.

Covenants for Title, 158. Washburn holds that he must be actually evicted. 2 Wash. Real Prop. 406. Georgia, Massachusetts, Maine, Virginia, Illinois, Ohio and Vermont courts hold the doctrine laid down by Rawle. 4 Ga. 593 ; 17 Mass. 588 ; 1 Fairf. (Me.) 170 ; 11 Leigh, 88 ; 41 Ill. 422 ; 10 Ohio, 382 ; 1 Aiken, 233. The courts of New York, Pennsylvania, Tennessee, Alabama, Indiana and Nebraska hold the doctrine here insisted upon. 58 Barb. 49 ; 58 Penn. St. 480 ; 1 Yerg. 16 ; 17 Ala. 198 ; 14 Ind. 311 ; 3 Neb. 84. Turning from such a mass of conflicting authorities to our own State, we find that our courts have for thirty years uniformly held to the doctrine contended for in behalf of the plaintiff in error. *Wilty* v. *Hightower*, 6 S. & M. 348 ; *Hoy* v. *Taliaferro*, 8 S. & M. 727 ; *Duncan* v. *Lane*, 8 S. & M. 744 ; *Heath* v. *Newman*, 11 S. & M. 205 ; *Dennis* v. *Heath*, 11 S. & M. 206 ; *Glenn* v. *Thistle*, 23 Miss. 51 ; *Burrus* v. *Wilkinson*, 31 Miss. 537 ; *Kirkpatrick* v. *Miller*, 50 Miss. 521. And the principle is too well settled to be shaken now. In this case the covenantee was not evicted, nor could he have been evicted by any one at the time he bought in the outstanding incumbrance. The outstanding title was still inchoate and had not ripened into a perfect title by which he could be evicted. He might, it is true, have brought assumpsit for money paid in protecting the title, and by that proceeding recovered, as he equitably ought, any actual necessary outlay in perfecting his vendor's title. He chose rather, while still in possession, to repudiate his vendor's title, and to seek, in the more technical action of covenant, the full measure of damages flowing from a breach of the covenant upon actual eviction. This he could not do. Even in a court of equity he would not be allowed to repudiate his vendor's title while in quiet possession. *Astor* v. *Robinson*, 49 Miss. 353. Much less will he be permitted to do so in the case at bar. A relaxation of the rule now held might work great hardship ; for then, though an incumbrance might be only nominal in amount, the vendee might buy it in and recover from his vendor the full price of the land. It might be double, treble or ten times the amount of the incumbrance. *Burrus* v. *Wilkinson*, *ubi supra*. There is no hardship as the law now stands, for a vendee may always reimburse himself for any

actual necessary outlay in protecting his vendor's title by an action of assumpsit. I therefore submit that the judgment should be reversed.

*Walter & Scruggs* and *R. W. Crump,* for the defendant in error.

The covenant in Keith's deed, that he will " forever warrant and defend the title in fee-simple against all lawful claims whatever," is a covenant for quiet enjoyment, and runs with the land. It is the most effective of all covenants, embraces every thing connected with title, and is synonymous with a covenant for quiet enjoyment. Rawle on Covenants, 203, note, 222, 226 ; 2 Greenl. Cruise, 460, note 1 ; 3 Wash. Real Prop. 391, 392, 396, 398, 399, 403 ; 1 Smith Lead. Cases, 140, 178, 179, 181 ; 2 Wash. Real Prop. 263, 264, and note ; 17 Mass. 588, 590 ; 22 Pick. 494 ; 1 Mass. 464 ; 2 Hill, 105 ; 4 Kent, 473 ; 4 Ga. 593 ; 6 Ala. 61.

The authorities which hold that the covenants against incumbrances which do not run with the land, refer to the strictly technical covenant that " the land is free from incumbrances " at the date of the deed. Rawle on Covenants, 110, 111.

If the intent of the covenant be that the covenantee " shall enjoy the land free from incumbrances," then such covenant runs with the land. 17 Ohio, 71 ; 20 Ala. 157 ; 8 Johns. 198 ; Rawle on Covenants, 110, and note, 124, 336 ; 3 Wash. Real Prop. 396.

It was not necessary that Britton should have been actually and physically evicted before he could have resorted to his action of covenant. Constructive or equitable eviction is all that is required. Rawle on Covenants, 269, 270 ; 3 Wash. Real Prop. 403, 404 ; 2 Greenl. Cruise, 460, note, 461 ; 17 Mass. 588, 590, 591 ; 6 Cushing, 124 ; Rawle on Covenants, 249, 271–277, and notes, 280–284, 288, 289, and notes.

Where there is an outstanding incumbrance, the covenantee need not wait until he is evicted, but may satisfy the incumbrance and resort to his action of covenant. 7 Johns. 358 ; 16 Johns. 254 ; 4 Mass. 351–353 ; 11 N. H. 74 ; 5 Ohio, 158 ; 4 Halst. 139 ; 39 Cal. 360 ; 9 Ala. 179 ; 6 Cushing, 124 ; Rawle on Covenants, 272, 273, and notes.

Where such outstanding title is actually asserted, the covenantee may yield to it or buy it in. Rawle on Covenants, 280, 281, and notes ; 3 Dean (Vt.), 709.

Where premises are sold and bought in by the vendee, or by a third person, to whom the vendee has attorned, or where he has, under pressure, attorned to a mortgagee, the vendee may sue on his covenants. Herm. on Estoppel, § 365; *Evans* v. *Elliott*, 9 Ad. & E. 342; 15 M. & W. 571; 11 Exch. 769; 17 Ark. 546; 42 Me. 342; 6 Dana, 426.

The true rules in reference to covenants of warranty are, that vendees should never act on fear of superior title, where its enforcement is not even threatened; that they may act when there is a real threat or effort to enforce a claim, but they do so at their peril, and must show not only the validity of the superior title, but also good faith; that when they act under judgments against them, to which the vendor is no party, such judgments can amount at most to only *prima facie* proof of their correctness; and that, finally, when a court has properly settled in a suit all questions of title to or incumbrances on property, to which suit the vendor and vendee and the party claiming the paramount title or incumbrances are parties, the vendee can act on the judgment of the court, and all parties are concluded by it. This last position is fully sustained by Rawle in the sixth chapter, fourth edition, of his great work on Covenants, and by the authorities cited. See from p. 145 to 175.

The foregoing principles, for which we contend, are sanctioned by the civil law. See citation to this effect in *Thomas* v. *Clement*, 11 Rob. 397. They are rules of action in England, *Foster* v. *Brent*, 4 Term R. 617; *Upton* v. *Townsend*, 17 Com. Bench, 30 (84 C. L.); and in nearly every State of the Union, *St. John* v. *Palmer*, 5 Hill, 599; *Cowdry* v. *Coit*, 44 N. Y. 382; *Loomis* v. *Bedel*, 1 Lans. 146; *Cobber* v. *Willborne*, 2 Dev. 390; *Leary* v. *Durham*, 4 Ga. 593; *Booth* v. *Starr*, 5 Day, 282; *Frank* v. *Creswell*, 5 Clark, 86; *Stewart* v. *Drake*, 4 Hals. 141; *Hamilton* v. *Cutts*, 4 Mass. 350; *Sprague* v. *Baker*, 17 Mass. 590; *Drew* v. *Towler*, 10 Foster, 537; *Loomis* v. *Bedel*, 11 N. H. 74; *Brown* v. *Dickson*, 2 Jones (Penn.), 372; *Woodward* v. *Allen*, 3 Dana, 164; *Huffey* v. *Burchett*, 11 Leigh, 88; *Thomas* v. *Stricker*, 32 Iowa, 76; *Davenport* v. *Bartlett*, 9 Ala. N. S. 179; *Melancon* v. *Duhamel*, 6 La. 200; *Succession of Durnford*, 8 Rob. 488; *Thomas*

v. *Clement*, 11 Rob. 397 ; *Lewis* v. *Davis*, 21 Ark. 235 ; *Mc-Dermott* v. *Cable*, 23 Ark. 203 ; *Nichols* v. *Alexander*, 28 Wis. 118 ; *Moore* v. *Vail*, 17 Ill. 190 ; *Middleton* v. *Thompson*, 1 Spears, 67 ; *Boyd* v. *Bartlett*, 36 Vt. 9 ; *Kerr* v. *King*, 5 Ohio, 158 ; *McAlpin* v. *Woodruff*, 11 Ohio St. 128.

Counsel commented on all the cases decided in the State of Mississippi, commencing with *Hoy* v. *Taliaferro*, 8 S. & M. 727, and ending with *Burrus* v. *Wilkinson*, 31 Miss. 537, and insisted that these decisions are not in harmony with the decisions of the civil and common law of every other country and State, and asked the court to overrule them.

The decisions of this State seem to rely on the principle " that the lessee shall not dispute the title of his landlord." This principle grew up under the feudal system, and was applicable to strict tenancies by lease.

By the ancient feudal warranty the lord was compelled to give the vassal an amount of land equivalent to that which he lost, and the same judgment which ousted the tenant gave a judicial remedy against the lord when he was a party. Rawle on Covenants, 2, 14, 15.

These warranties were gradually changed, mostly by statute : first by the Statute *De Donis*, in 1285 ; then by Statute *Quia Emptores*, in 1290 ; then by that of 11 Henry VII. c. 20, in 1494 ; then by 4 & 5 Anne, c. 16, in 1705 ; and then by the final abolition of warranties, by act of Parliament, in 1834.

Warranties during all this period were falling into disuse, and after the Statute of Uses were gradually superseded by conveyance to use by deed with general covenants of warranty. The present method of conveyance came into general use about two hundred years ago, and attained perfection in this country much sooner than in England. Our courts of Mississippi therefore adopted the feudal reason long after the feudal rule ceased to exist, and now in this a less liberal practice obtains than existed in feudal times under the action of voucher to warranty.

The decision of this court in *Kirkpatrick* v. *Miller*, 50 Miss. 521, has relieved from some of the hardship of previous decisions, and has left the whole rights of parties on the usual covenants of warranty, a matter of *pleading and not a rule of property*. See also *Gwyn* v. *McCarroll*, 1 S. & M. 35.

Counsel also insisted that the title being in the County of Panola, as conveyed to it by Keith, that this was equivalent to an eviction. The rule applicable to a State is also applicable to a county, which Dillon on Municipal Corporations, 32, says is " an involuntary political or civil division of the State, created by general laws, to aid in the administration of government," and " are purely auxiliaries of the State." See also *Hamilton Co.* v. *Mighels*, 7 Ohio St. 109; Cooley on Constitutional Limitations, 240–242; *Coals* v. *Madison*, 1 Breese, 115; *Granger* v. *Pulaski Co.*, 26 Ark. 37; *Ray* v. *Bently*, 40 Mo. 236.

At common law a suit will not lie either for or against a county. *Anderson* v. *State*, 23 Miss. 459; *Sutton* v. *Carroll Co.*, 41 Miss. 238; *Lyles* v. *St. Clair Co.*, 3 McLean, 580; *Rockland* v. *Steele*, 31 Ill. 543.

The title to land in counties must therefore be regarded in the same light as if they were in the State, and force could be used to eject trespassers therefrom. *Burr* v. *Norton*, 25 Conn. 103; *Sparks* v. *Purdy*, 11 Mo. 219.

SIMRALL, C. J., delivered the opinion of the court.

James Britton brought an action of covenant against G. W. Dyer, administrator of the estate of John H. Keith, deceased. The suit is founded on the covenant of Keith, the intestate, in a deed of bargain and sale to Edward G. Baker, to this effect, that " he (Keith) would warrant and forever defend the title in fee-simple against all lawful claims whatever." Afterwards Baker and wife sold and conveyed the same land to Britton with like covenant.

Keith, before his conveyance to Baker, mortgaged the land to Goff, county treasurer of Panola County, to secure a note of $2,280, payable to him as *ex officio* treasurer of the common-school fund of the county.

Keith having died without paying this debt, Goff, as treasurer, brought his bill in chancery against Dyer, administrator, Britton and others, to foreclose the mortgage.

A decree was rendered ordering a sale unless the money was paid. Dyer, the administrator, having failed to make the payment, the plaintiff, Britton, on the 29th of September,

1869, paid to Goff, the treasurer, $2,470.40, the amount required to prevent a sale of the land and an eviction from it; by reason whereof the said Dyer, administrator, has broken the covenant of his intestate.

The defendant craved oyer of the deed, which was granted, and thereupon demurred to the declaration; assigning, among other causes, that the plaintiff does not show that he has ever been evicted or ousted from the land, or that he has ever surrendered possession to or been kept out of possession by an outstanding paramount legal title.

Although the point is made in the demurrer that Britton could not sue on Keith's covenant to Baker, it has been abandoned in this court; and it was conceded at the argument, by the counsel for the defendant, that the covenant ran with the land, and passed by assignment to Britton, the plaintiff.

The covenants implied by the statute, from the use of the words "grant, bargain and sell," that the grantor is seised of an estate free from incumbrances, and of quiet enjoyment against the grantor, his heirs and assigns, do not arise, and have no existence, if the grantor makes express warranties. These will be considered as the measure of his undertaking, and will exclude all further liability. *Hoy* v. *Taliaferro*, 8 S. & M. 727; *Duncan* v. *Lane*, 8 S. & M. 744, 753.

The decisions in this State hold that, in order to sustain an action on the covenant of general warranty, there must be either an actual eviction by judicial process, or a surrender of possession to a valid subsisting paramount legal title, asserted against the covenantee; or that there must be a holding of the grantee out of possession, by such title, so that he could not enter. *Dennis* v. *Heath*, 11 S. & M. 206, 218; *Witty* v. *Hightower*, 12 S. & M. 478, 481; *Burrus* v. *Wilkinson*, 31 Miss. 537.

Quite thirty years have elapsed since the first of these decisions. We are now asked to overrule them, because the doctrine which they announce is not in harmony with the current of American law, and is not supported by sound reason. There is great force in the suggestion. If the question were *res integra*, we should adopt the reasoning and conclusions of that line of decisions, which have admitted constructive or equitable evic-

tions as of equal import with an actual ouster in certain circumstances.

We fully concede the force and justice of the argument, that if the vendee in good faith pays off a foreclosure decree, which if executed would destroy his estate and evict him from the land, he should have indemnity by suit on the covenant of the warrantor. He has done that which was necessary to protect his title and possession, perhaps, too, at less than half the cost of the property.

If we did not have in our jurisprudence a principle which is equitable and just, we should not hesitate to overturn these decisions, if they were the obstruction. But we have in the remedial machinery of our jurisprudence full, practical and adequate remedy and redress for the covenantee to reimburse him for the outlays in extinguishing such incumbrances, or in getting in the adverse paramount title. He may recover the money back in the action of assumpsit, as in *Kirkpatrick* v. *Miller*, 50 Miss. 521, or he may sue in chancery.

The action of assumpsit may be resorted to in every instance where money has been necessarily expended to discharge the estate from incumbrances, or to get in a title to avoid an eviction. In no state of case in this action is the covenantor liable to refund more than was actually paid by the covenantee, and never in excess of his liability on the covenant, where an actual eviction could be assigned as a breach; so that we afford to the covenantee a cheap and simple remedy at law, which administers as complete and full indemnity as that class of cases elsewhere, which recognize breaches of the covenant as constructive and technical evictions.

But in addition to this legal remedy the covenantee and vendee may bring his plaint in the Court of Chancery; and there be redressed according to the principles of equity and good conscience. The doctrine of that court is, that he must deal fairly and in fidelity to his warrantor; that while he will not be permitted to break allegiance to the title under which he entered and holds possession, yet he shall not be put to the useless expense of a fruitless litigation against an incumbrance or paramount title, which must ultimately prevail, but may, if necessary to preserve the estate and the possession, pay off

the one and buy in the other ; and for such outlays of money he shall be reimbursed. *Hardeman* v. *Cowan*, 10 S. & M. 486, 501; *Ayres* v. *Mitchell*, 3 S. & M. 683, 694; *Champlin* v. *Dotson*, 13 S. & M. 553, 556 ; *Hill* v. *Samuel*, 31 Miss. 307, 311.

It must be noted, however, that the covenantee assumes the risk of judging correctly as to the character and validity of the incumbrance or title which he buys in. He must establish, as a condition precedent to recovery, either at law or in equity, that it was a paramount lien or title against which the warrantor was bound to defend him, and that he acted under a necessity to save the estate.

It will be perceived, therefore, that while we deny to the covenantee a technical action on the warranty, unless he can show an actual eviction or surrender to a paramount title, &c., yet the principle of law for which the defendant in error contends is as vital here as in those States which allow suit on the covenant. But it must be evoked either in the action of assumpsit or by suit in chancery.

The question under consideration has no other significance than of pleading, and the method of remedy. It is of no practical importance whether the decisions are permitted to stand, or whether they should be overruled. They do not stand in the way of justice or right. In such circumstances, we do not feel called upon to overrule them.

In the present case, the cause of action being substantially the same whether in covenant or assumpsit, on the return of the case to the Circuit Court the pleading might be reformed so as to change the form of the action. That kind of amendment is expressly allowed by statute.

We think the demurrer to the declaration ought, for the cause assigned, to have been sustained.

We reverse the judgment, sustain the demurrer to the declaration, but remand the cause to the Circuit Court, so that the pleading may be amended, if the plaintiff in that court shall be so advised.